THE STATE *v.* L. C. BAKER.

CRIMINAL LAW. *Evidence. Witness.* When the witness is within the
jurisdiction of the court, but unable to be present at the trial, and
there has been no failure of diligence on the part of the defendant,
he cannot be compelled to take what he assumes he can prove by
the witness as set out in his affidavit for a continuance, as the testi-
mony of the witness, upon the agreement of the district attorney
that the statements of the affidavit should be read as the testimony
of the absent witness. Distinguished from *Petty* v. *State*, 4 Lea, 328.

FROM GIBSON.

Appeal in error from the Circuit Court at Gibson
county. J. T. CARTHEL, J.

COOPER & HAYS, M. M. NIEL and HILL & WIL-
LIAMSON for Baker.

McDERMOTT & TYREE and ATTORNEY-GENERAL
LEA for the State.

FREEMAN, J., delivered the opinion of the court.

The defendant was indicted in the circuit court of
Gibson county jointly with one John Powell, for an
assault with intent to commit murder in the first de-
gree, on one Mount Elam, on the first day of August,
1881, by shooting him with a shot-gun.   He was con-
victed and sentenced to three years imprisonment in
the penitentiary, from which judgment he appeals in
error to this court.

The first error assigned for reversal is the refusal
of the court to continue the case on the affidavit of

·defendant showing the absence of two witnesses—Mrs. Griffin and Mrs. Hammond—and requiring defendant to accept the statement of the affidavit as the testimony of the witnesses. This affidavit stated that he could prove by Mrs. Griffin, that on Friday before the shooting, on Monday morning about day-light, that John Powell, who is jointly indicted with defendant, was passing along the high-way near where Elam lived, that he and his father way-laid Powell, stopped him in the road as he was riding along, assaulted Powell with clubs, knocked him off his horse and beat him severely, the said Mount Elam, who was shot, knocking Powell off his horse, and Ed. Elam a brother, and Bud Elam a cousin, being present aiding and abetting in the assault. That they had beaten Powell cruelly and unmercifully, he being alone and having no friends with him. The purpose of this testimony, as stated, was to show that Powell had a motive for shooting Mount Elam—the theory of defendant being he had none, and that Powell alone had done it. It is further stated that Mrs. Griffin is the only witness by whom these facts can be proven, as no one else saw it except Powell and the parties engaged in it. This witness had been subpœnaed and the court had given an attachment for the witnesses mentioned, but the officer returned that owing to the state of their health, they being married ladies, they could not properly be brought to the court.

The counsel for the State and district attorney stated to the court, they would admit that Mrs. Griffin and Mrs. Hammond would testify to what affiant stated

they would, and they would agree that these statements might be read as the testimony of those witnesses. The statement of Mrs. Hammond need not be given at present, except to say the facts would have been material testimony on the trial. The defendant objected to this, insisting he was entitled to have these witnesses in proper person before the jury, and refused to agree to accept the statements in lieu of their testimony.

The court ruled on this question that the defendant must go to trial without the witnesses, and accept the statements as their evidence, to which defendant excepted. The witnesses are shown to have been within the jurisdiction of the court, but unable to attend court. It is proper, too, to say, that the testimony of Mrs. Griffin is shown to have been important is this case, for the circumstances of the attack on Powell, as to the facts, are given by Mount Elam on the trial in a very much milder form than the statements in the affidavit would indicate, and in fact, as other circumstances would show the truth to have been. Besides, he swears this difficulty was several months before the shooting, and there is no direct testimony, we believe, to the contrary—no one, if any, who saw it.

This statement presents the direct question as to whether, in a case where the witness is within the jurisdiction of the court, but unable to be present at the time of trial, where there has been no failure of diligence on the part of the defendant, the defendant can be compelled to take what he assumes he can prove by the witness, as given in his affidavit as the

testimony of the witness, upon the simple agreement of the district attorney, that the statements of the affidavit should be read as the testimony of the absent witness.

In the case of *Goodman* v. *The State*, Meigs R., 195, a prosecution for lewdness, this question came before this court directly for adjudication. The defendant tendered an affidavit for a continuance, giving the names of his witnesses, and what he expected to prove by each of them; the attorney-general agreed that the affidavit might be read as evidence, and thereupon the court ordered the case to proceed. The court reversed the judgment on this ground alone, declining to consider others urged in argument.

Judge Reese, in delivering the opinion of the court said, that in the case of *Rhea* v. *The State*, 10 Yer., the court had said "the practical operation of such an agreement upon the rights and fate of the defendant must often, if not always, be perfectly illusory. We now go further than the intimation in that case, and say that when the admission of the counsel of the State is not merely that the witnesses would testify as stated, but that the facts are true as set forth in the affidavit, such admission should not preclude the defendant in a criminal case from his constitutional right of having witnesses personally present at the trial." He adds: "It were needless to urge on practical and enlightened minds the difference in point of legitimate effect, between the personal presence of candid and respectable witnesses who testify to facts in their detail, ramification and bearing, and the general admission of

these by an attorney-general, little impressing, perhaps, the minds of the jury, and constituting as to its extent and bearing, a fruitful source of difficulty and dispute."

While we think this statement perhaps goes too far, when it is assumed that the agreement to admit that the facts stated are true as set forth in the affidavit might not be sufficient, because if thus admitted they could not be disputed, and would stand as absolutely conceded for all the purposes of the case, yet we see no answer to the argument when applied to a case like the present, where the meager statement of an affidavit is merely agreed to stand as the testimony of the witnesses or what they would swear if present. In a case like the present, where the witnesses are to facts that tend to contradict and impeach the testimony of witnesses offered by the State, all must concede the special importance of having the two classes of witnesses before the jury, so that their personal bearing, their intelligence and means of knowing the facts and freedom from bias, or the opposite may be seen by that body, a defendant would be placed at a disadvantage that might be ruinous to his cause, by losing the benefit of all these elements of weight, in giving effectiveness to testimony we have stated—elements conceded by our law to be legitimate matters of consideration to be remarked on by the trial judge in giving the rules to a jury, by which to test the value of the testimony of witnesses deposing before them. A mere written statement of what witnesses are expected to swear, as contained in an affidavit has

The State *v.* Baker.

no one of these elements in it, and thus the defend-
ant is deprived entirely of them by such practice.
While the constitutional provision that the defendant
"is to have compulsory process for obtaining witnesses
in his favor," may not imperatively demand their pres-
ence in any case, yet the view of Judge Reese is
certainly more in accord with the fair implications of
th it provision than the opposite view. It would ill
accord with the spirit of that right, where the wit-
nesses are in the reach of the process of the court, if
the defendant is compelled to take a mere written
statement as the equivalent of the personal presence
contemplated by the use of the process guaranteed to
him by the Constitution.

The learned circuit judge, no doubt, deemed his
course sustained by the case of *Petty* v. *The State*, 4
Lea, 328. That case was correctly decided—the wit-
ness being a non-resident of the State and the only
benefit defendant could reasonably expect from his
testimony, was his deposition; at any rate, he was be-
yond the compulsory process of the court, and there-
fore not within the reasoning of Judge Reese in the
case cited. Confine the opinion as it should be on
well settled principles to its facts, and it makes a
proper exception to a general rule, but ought not, as
it was not intended to do, to be held as overruling
the case from Meigs' Reports.

As the case must go back for another trial, it is
proper to say that his Honor, the circuit judge, should
have been more explicit in his statement of the rules
that should govern the jury in giving credence to wit-

nesses sought to be impeached, and in this case rigor-
ously attacked on their general character. They were
attacked on part of defense by six witnesses, they were
sought to be sustained by eight witnesses. As to this
point, he simply stated in substance to the jury, that
a witness might be impeached by proving that he or
she was of bad character, and be sustained by proof
of good character. He then told them that what
credit a witness thus attacked is entitled to is for a
jury to decide from all the testimony—as he puts it,.
"from all the evidence, do you believe the witness?"

The rule is properly given in *Kinchelo* v. *The State,*
5 Hum., 12, where the point was whether the number
of witnesses attacking and sustaining were equal. The
court say: "The fact that a witness is assailed by a
single witness casts a reproach upon it, and it then
becomes a question to be decided upon by the jury
like other questions of fact, and is to be judged of,
not by number of witnesses but by their respectability
and intelligence, consistency and means of information."

It was the more important to give the qualification
indicated in this case, where the attack was not by a
single witness, but by a half dozen, and his Honor
should have told the jury that where the character of
the witness was thus impeached, if the attacking wit-
nesses were respectable, intelligent, consistent and had
means of information as to the question, then such
an attack cast a reproach on the witness so attacked,.
and they should weigh their testimony in connection
with all the testimony sustaining what they had said,
in view of this fact. We do not say this would, in

all cases, be reversible error, but in the case before us such instruction was material to guide the jury in weighing the testimony of the witnesses attacked and sought to be sustained.

For these reasons the judgment is reversed and the case remanded for a new trial.